**PELTON GRAHAM LLC**
Brent E. Pelton
Pelton@PeltonGraham.com
Taylor B. Graham
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RENE JORGE CORTEZ, INOCENTE RECINOS GARCIA, CONSTANTINO GARCIA DIAZ, MANUEL LOPEZ, MIGUEL ANGEL MARTINEZ, and MIGUEL COJ MEJIA, Individually and on Behalf of All Others Similarly Situated,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| **Plaintiffs,** | |
| **-against-** | **Jury Trial Demanded** |
| **APNA HOLDING LLC d/b/a APNA BAZAR CASH & CARRY, S&K VEGETABLES CORP., S&K GREEN GROCERIES, INC., J&B VEGETABLES, INC., MASPETH WHOLESALE CORP. d/b/a APNA WHOLESALE, DESH DEEPAK BHARDWAJ, JASWINDER SINGH, and JOHN DOE CORPS. #1-4, Jointly and Severally,** | |
| **Defendants.** | |

Plaintiffs Rene Jorge Cortez, Inocente Recinos Garcia, Constantino Garcia Diaz, Manuel Lopez, Miguel Angel Martinez, and Miguel Coj Mejia (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Defendants own, operate and manage a chain of supermarkets throughout New York and Pennsylvania specializing in South Asian groceries operating under the trade name "Apna Bazar." Plaintiffs are current and former helpers, stock clerks, and general supermarket employees at seven (7) of Defendants' supermarkets located in Queens County and Nassau County, New York and in Bensalem, Pennsylvania.

2.      For their work, Defendants paid Plaintiffs as salaried "exempt" employees even though Plaintiffs primarily performed non-exempt grocery clerk duties. Consequently, by paying Plaintiffs on a purported "salary" basis, Defendants failed to compensate Plaintiffs at not less than minimum wage for all hours worked and did not provide overtime premiums for hours worked in excess of forty (40) hours per week.

3.      All Plaintiffs bring this action to recover unpaid minimum wages and overtime premiums owed to them pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs bring their FLSA claims on behalf of themselves and a collective of all current and former employees of Apna Bazar working as stockers, helpers, and grocery clerks since the date three (3) years prior to the filing of this Complaint.

4.      Plaintiffs Rene Jorge Cortez, Inocente Recinos Garcia, Constantino Garcia Diaz, Manuel Lopez, Miguel Angel Martinez, and Miguel Coj Mejia (the "NY Class Reps") bring this action to recover unpaid overtime wages owed to them pursuant to the New York Labor Law ("NYLL"), §§ 650 *et seq.*, unpaid spread-of-hours premiums, and damages due to Defendants' violations of the wage notice provisions under the NYLL §§ 190 *et seq.* The NY Class Reps bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23")

class of all current and former employees of Apna Bazar in New York working as stockers, helpers, and grocery clerks since the date six (6) years prior to the filing of this Complaint.

5.     Plaintiff Manuel Lopez (the "PA Class Rep"), brings this action to recover unpaid minimum wage and overtime wages owed to him pursuant to the Pennsylvania Minimum Wage Act, 43 Pa. Stat. § 333.101 *et seq*. ("PMWA") and their implementing regulations, 34 Pa. Code §§ 231.1, *et seq.*, and the Wage Payment and Collection Law, 43 Pa. Stat. §§ 260.1 *et seq.* ("WPCL") and their implementing regulations, 34 Pa. Code §§ 231.1, *et seq.*, 34 Pa. Code §§ 9.1 through 9.3. The PA Class Rep brings his PMWA and WPCL claims on behalf of himself and a Rule 23 class of all current and former employees of Apna Bazar in Pennsylvania working as stockers, helpers, and grocery clerks since the date three (3) years prior to the filing of this Complaint.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants maintain business locations in this district.

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

9.     Plaintiff <u>Rene Jorge Cortez</u> ("Cortez") was, at all relevant times, an adult individual residing in Queens County, New York.

10.     Plaintiff <u>Inocente Recinos Garcia</u> ("Recinos") was, at all relevant times, an adult individual residing in Queens County, New York.

11.     Plaintiff <u>Constantino Garcia Diaz</u> ("Garcia") was, at all relevant times, an adult individual residing in Queens County, New York.

12.     Plaintiff <u>Manuel Lopez</u> ("Lopez") was, at all relevant times and adult individual residing in Queens County, New York and Bensalem, Pennsylvania.

13.     Plaintiff <u>Miguel Angel Martinez</u> ("Martinez") was, at all relevant times and adult individual residing in Queens County, New York.

14.     Plaintiff <u>Miguel Coj Mejia</u> ("Coj") was, at all relevant times and adult individual residing in Queens County, New York.

15.     Throughout the relevant time period, Plaintiffs performed work for Defendants at seven (7) of their Apna Bazar grocery stores, located at:

(1) 72-20 37th Avenue, Jackson Heights, New York 11372;

(2) 113-18 Liberty Avenue, Richmond Hill, New York 11419;

(3) 260-04 Hillside Avenue, Floral Park, New York 11004;

(4) 124-16 Liberty Avenue, Richmond Hill, New York 11419;

(5) 56-28 56th Street, Maspeth, New York 11378;

(6) 217 Bethpage Road, Hicksville, New York 11801; and

(7) 2610-2631 Street Road, Plaza Shopping center, Bensalem, Pennsylvania 19020.

16.     Plaintiffs each consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**Defendants:**

17.     Upon information and belief, APNA HOLDING LLC., is an active New York Corporation doing business as "Apna Bazar Cash & Carry Supermarket," with its principal place of business at 72-20 37th Avenue, Jackson Heights, New York 11372.

18.     Upon information and belief, S&K VEGETABLES CORP. is an active New York Corporation doing business as "Apna Bazar Cash & Carry Supermarket," with its principal place of business at 72-20 37th Avenue, Jackson Heights, New York 11372.

19.     Upon information and belief, S&K GREEN GROCERIES INC., is an active New York Corporation doing business as "Apna Bazar Cash & Carry Supermarket," with its principal place of business at 113-18 Liberty Avenue, Richmond Hill, New York 11419.

20.     Upon information and belief, J&B VEGETABLES, INC. is an active New York Corporation doing business as "Apna Bazar Cash & Carry Supermarket," with its principal place of business at 260-04 Hillside Avenue, Floral Park New York 11004.

21.     Upon information and belief, MASPETH WHOLESALE CORP. is an active New York Corporation doing business as "Apna Bazar Cash Wholesale", with its principal place of business at 72-20 37th Avenue, Jackson Heights, New York 11372.

22.     Upon information and belief, JOHN DOE CORPS. #1-4, represent other active corporations doing business as "Apna Bazar Cash & Carry Supermarket", with their principal places of business at: (1) 2975 John F. Kennedy Blvd., Jersey City, New Jersey 07306; (2) 217 Bethpage Road, Hicksville, New York 11801; (3) 124-16 Liberty Avenue, Richmond Hill, New York 11419; and (4) 1700 Oak Tree Rd., Edison New Jersey 08820.

23.     The Corporate Defendants listed in paragraphs 17 through 22 are hereinafter referred to collectively as the "Corporate Defendants" or "Apna Bazar."

24.     The Corporate Defendants are operated together as a single business enterprise, with the same employment policies, including wage and hour policies.

25.     Defendant <u>Desh Deepak Bhardwaj</u> ("Bhardwaj"), is an owner and operator of the Corporate Defendants.  Bhardwaj sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Bhardwaj was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of Apna Bazar.

26.     Defendant <u>Jaswinder Singh</u> ("Singh" and together with Bhardwaj, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants.  Singh sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Singh was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of Apna Bazar.

27.     Defendants Bhardwaj and Singh participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in their direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

28.     The Corporate Defendants' operations are interrelated and unified.

29.     At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

30.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

31.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

32.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

33.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since January 23, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked as helpers, grocery clerks, and stock employees (the "Collective Action Members").

34.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of paying them a purported salary which did not vary with the number of hours they worked, did not compensate them for all hours worked, did not compensate them at minimum wage for all hours worked and did not provide overtime premiums.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive minimum wage for all hours worked or overtime premium payments for all hours worked in excess of forty (40) hours per week.

35.     Plaintiffs and the Collective Action Members have similar job duties and are paid

pursuant to a similar, if not the same, payment structure.

## **RULE 23 CLASS ALLEGATIONS**

## **NEW YORK CLASS ALLEGATIONS**

36.     Pursuant to the NYLL, the NY Class Reps bring their Third through Seventh

Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves

and the following class:

> All persons employed by Defendants in New York at any time since
> January 23, 2011 and through the entry of judgment in this case (the
> "New York Class Period") who worked as helpers, grocery clerks,
> and stock employees (the "NY Class Members").

37.     The NY Class Members are readily ascertainable. The number and identity of the

NY Class Members are determinable from the records of Defendants.  For purposes of notice and

other purposes related to this action, their names and addresses are readily available from

Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure.

38.     The NY Class Members are so numerous that joinder of all members is

impracticable.

39.     Upon information and belief, there are well in excess of forty (40) NY Class

Members.

40.     The questions of law and fact common to the Class predominate over any questions

solely affecting the individual members of the Class. These common questions include, but are not

limited to:

   a.   whether Defendants employed Plaintiffs and the NY Class Members within the

        meaning of the NYLL;

   b.   whether Defendants had a policy or actual practice of paying a flat weekly rate or

        "salary" to Plaintiffs and the NY Class Members;

8

c. whether Defendants failed and/or refused to pay Plaintiffs and the NY Class Members at least minimum wage for all hours worked;

d. whether Defendants failed and/or refused to pay Plaintiffs and the NY Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e. whether Defendants revised the hours tracked by Plaintiffs and the NY Class Members in order to credit employees with fewer hours than they actually worked;

f. whether Defendants failed to pay Plaintiffs and the NY Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

g. whether Defendants failed to provide Plaintiffs and the NY Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h. whether Defendants failed to provide proper wage notice to Plaintiffs and NY Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i. whether Defendants' failure to properly pay Plaintiffs and the NY Class Members lacked a good faith basis; and

41. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

42. <u>Plaintiffs' claims are typical of the NY Class Members' claims</u>. Plaintiffs, like all NY Class Members, are supermarket employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all NY Class Members, were, *inter alia*, not paid minimum wage for all hours worked; not paid overtime premium pay for hours worked over forty (40) hours in a given workweek; not paid spread-of-hours premiums for days in which they

worked in excess of ten (10) hours and/or a split shift; not provided proper wage statements with each of their wage payments; and not provided proper wage notice when hired or before February 1 of each year. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all NY Class Members.

43.     <u>Plaintiffs and their Counsel will fairly and adequately represent the NY Class</u>. There are no conflicts between Plaintiffs and the NY Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

44.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the NY Class Members.

**PENNSYLVANIA CLASS ALLEGATIONS**

45.     Pursuant to the Pennsylvania Minimum Wage Act, the PA Class Rep brings the Eighth and Ninth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in Pennsylvania at any time since January 23, 2014 and through the entry of judgment in this case (the "PA Class Period") who worked as helpers, grocery clerks, and stock employees (the "PA Class Members").

46.     <u>The PA Class Members are readily ascertainable</u>. The number and identity of the PA Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure.

47.     <u>The PA Class Members are so numerous that joinder of all members is impracticable</u>.

48.     Upon information and belief, there are well in excess of forty (40) PA Class

Members.

49.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

    a.   whether Defendants employed Plaintiff and the PA Class Members within the meaning of the Pennsylvania Minimum Wage Act;

    b.   whether Defendants had a policy or actual practice of paying a flat weekly rate or "salary" to Plaintiff and the PA Class Members;

    c.   whether Defendants failed and/or refused to pay Plaintiff and the PA Class Members at least minimum wage for all hours worked;

    d.   whether Defendants failed and/or refused to pay Plaintiff and the PA Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

    e.   whether Defendants' failure to properly pay Plaintiff and the PA Class Members lacked a good faith basis; and

    f.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

50.     Plaintiff's claims are typical of the PA Class Members' claims. Plaintiff, like all PA Class Members, is a supermarket employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all PA Class Members, was, *inter alia*, not paid minimum wage for all hours worked, and not paid overtime premium pay for hours worked over forty (40) hours in a given workweek. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all PA Class Members.

51. <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the PA Class Members, and Plaintiff brings this lawsuit out of a desire to help all PA Class Members, not merely out of a desire to recover his own damages.

52. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the PA Class Members.

53. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

54. Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

55. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

**STATEMENT OF FACTS**

**Defendants' Grocery Stores**

56. At all relevant times, Defendants have been in the grocery business. Upon information and belief, Defendants currently own, operate, and manage at least ten (10) supermarkets throughout New York, New Jersey, and Pennsylvania.

57. Defendants jointly market all of their Apna Bazar store locations on their various promotional flyers and refer to their grocery stores as a single business cooperative with multiple locations.

58. Defendants employ hundreds of employees at any one time in their various

supermarkets in New Jersey, New York and Pennsylvania, including approximately twenty-five (25) in each of the grocery stores worked in by Plaintiffs.

59.     Upon information and belief, Defendants Bhardwaj and Singh are in constant contact with the managers of Apna Bazar Supermarkets Enterprise to ensure that the supermarkets are operating in accordance with their standards and policies.

60.     Defendants Bhardwaj and Singh are frequently present at the Apna Bazar Enterprise grocery stores, including the stores worked in by Plaintiffs, to oversee the operations of the stores and to implement the policies complained of herein.

61.     Upon information and belief, Defendants operate all of the grocery stores through common management, centralized control of labor relations, and common ownership and/or financial control.

**Plaintiffs' Work for Defendants**

62.     **Plaintiff Cortez** worked for Defendants as a helper, spice packing employee, and stock clerk, from in or around 2012 to the present (the "Cortez Employment Period").

63.     During the first approximately two (2) months of the Cortez Employment Period, Cortez worked as a helper at the 72-20 37th Avenue Location, doing cleaning and stock clerk work primarily in the basement area.  From in or around 2012 to the present, Plaintiff Cortez has been working in different capacities, as a spice packer and stock clerk, responsible for packing different spices, helping unload trucks, inspect merchandise, stock shelves, track inventory, set displays, label products, clean aisles, and make orders to restock products.

64.     For approximately eight (8) months during 2014, Plaintiff Cortez worked as a stock clerk at the Apna Bazar Supermarket located on 113-18 Liberty Avenue, South Richmond Hill, New York.  During this time, Cortez has the same responsibilities as the 72-20 37th Avenue

Location, such as helping unload trucks, inspecting merchandise, stocking shelves, tracking inventory, setting displays, labeling products, cleaning aisles, and making orders to restock products. For the remainder of the Cortez Employment Period, from in or around 2014 to the present, Plaintiff has been working at the 72-20 37th Avenue Location as a stock clerk responsible for stocking certain food aisles.

65.     When Cortez worked at the 72-20 37th Avenue Location, during his first year of employment in or around 2012, Plaintiff typically worked seven (7) days per week from approximately 9:00 am to approximately 9:00 pm, for a total of approximately eighty-four (84) hours per week. From in or around 2013 to in or around 2014, including the eight (8) month period when Plaintiff Cortez worked at the 113-18 Liberty Avenue Location, Plaintiff Cortez generally worked six (6) days per week, with most Tuesdays off, from approximately 9:00 am to approximately 9:00 pm, for a total of approximately seventy-two (72) hours per week.

66.     From in or around the end of 2015 to the present, after a complaint was lodged against Defendants, Plaintiff Cortez's hours were reduced such that he generally worked six (6) days per week, with most Thursdays off, from approximately 9:00 am to approximately 6:30 pm, for a total of approximately fifty-seven (57) hours per week.

67.     From in or around 2012 to in or around the beginning of 2014, when Plaintiff Cortez worked a seven (7) day workweek, he was paid a fixed salary of approximately four hundred fifty dollars ($450.00) per week, regardless the number of hours worked during the given workweek. During the same period, when Plaintiff Cortez worked a six (6) day workweek, he was paid a fixed salary of approximately four hundred dollars ($400.00) per week. From in or around the beginning of 2014 to in or around the end of that year, Plaintiff Cortez was paid a fixed salary of approximately five hundred dollars ($500.00) per week. From in or around the end of 2014 to in

or around 2016, Plaintiff Cortez was paid a fixed salary of approximately five hundred seventy-five ($575.00) dollars per week.

68.     During the first years of Cortez Employment Period, from in or around 2012 to in or around 2014, Defendants did not track by any method the hours worked for any of the employees at their supermarket.  From in or around the end of 2014, Defendants installed a timeclock machine at the premises of the supermarket, but it was not frequently used by the employees because they understood that they were paid a fixed salary each week regardless the number of hours worked during a given work week.  During that period, if Plaintiff Cortez and other employees recorded the hours on the timeclock machine, they were able to track the hours for every day worked each week.  From in or around 2016 through the present, the timeclock machine stopped tracking the hours worked on a day on the 5th day of work during the week.  As a result, many of the Defendants' employees began handwriting their hours worked during the 6th day of work on their time cards.

69.     Plaintiff Cortez observed Defendants Singh and Bhardwaj at the 72-20 37th Avenue Location and the 113-18 Liberty Avenue Location, supervising employees and overseeing the operations of the business.  Defendants have their "Corporate Office" at the 72-20 37th Avenue Location.

70.     **Plaintiff Recinos** worked for Defendants as a helper, spice packing employee, and stock clerk, from in or around 2012 to the present (the "Recinos Employment Period").

71.     Throughout his entire employment period with Defendants, Plaintiff Recinos has worked at the 72-20 37th Avenue Location.

72.     During approximately the first six (6) months of the Recinos Employment Period, Recinos worked as a helper doing cleaning and stock clerk duties primarily in the basement area.

From in or around the second part of 2012 to the present, Plaintiff Recinos has been working as a spice packer and stock clerk, responsible for packing spices, helping unload trucks, inspecting merchandise, stocking shelves, tracking inventory, cleaning aisles, and making orders to restock products.

73.     During the period Plaintiff Recinos was performing his job in the basement of the 72-20 37th Avenue Location in or around 2012, Plaintiff typically worked six (6) and very often seven (7) days per week, from approximately 9:00 am to approximately 9:00 pm, for a total of approximately seventy-two (72) to eighty-four (84) hours per week.  For the remainder of his employment period, Plaintiff Recinos generally worked six (6) days per week, with most Mondays off, from approximately 9:00 am to approximately 9:00 pm, for a total of approximately seventy-two (72) hours per week.

74.     During the first year of his employment in or around 2012 to in or around 2013, Plaintiff Recinos was paid a fixed salary of four hundred dollars ($400.00) per week, regardless the number of hours worked during the workweek.  From in or around the middle of 2013 to in or around 2014, Plaintiff Recinos was paid a fixed salary of four hundred fifty dollars ($450.00) per week.  From the last six (6) months of 2014, Plaintiff Recinos was paid a fixed salary of four hundred seventy-five dollars ($475.00) per week.  From in or around 2015 to the beginning of 2016, Plaintiff Recinos was paid a fixed salary of five hundred dollars ($500.00) per week.  From in or around the beginning of 2016 to the present, Plaintiff Recinos has been paid a fixed salary of approximately five hundred forty dollars ($540.00) per week, regardless the number of hours worked during a given workweek.

75.     Plaintiff Recinos observed Defendants Singh and Bhardwaj at the 72-20 37th Avenue Location supervising employees, giving orders to managers and employees, and

overseeing the operations of the business.

76.     **Plaintiff Garcia** worked for Defendants as a helper, spice packing employee, and stock clerk, from in or around 2013 to the present (the "Garcia Employment Period").

77.     From the beginning of his employment to the present, Plaintiff Garcia has worked at the 72-20 37th Avenue Location, with the exception of a period of three to four (3-4) months in 2015, when he worked at the 206-04 Hillside Avenue Location.

78.     From in or around 2013 to in or around 2015, Plaintiff Garcia worked at 72-20 37th Avenue Location as a spice packer and stock clerk, responsible for packing spices, helping unload trucks, inspecting merchandise, stocking shelves, tracking inventory, cleaning aisles, and making orders to restock products.   For a period of around three (3) to four (4) months in 2015, Plaintiff Garcia worked as a spice packer and stock clerk at 206-04 Hillside Avenue Location, performing the same duties and doing his job under the same practices and policies as the other supermarket where he worked.  From in or around 2015 to the present, Plaintiff has been working at 72-20 37th Avenue Location, performing the same duties as a spice packer and stock clerk.

79.     Throughout his entire employment period with Defendants, including the time Plaintiff Garcia worked at the two (2) different locations, Plaintiff Garcia typically worked six (6) and very often seven (7) days per week, from approximately 9:00 am to approximately 9:00 pm, for a total of approximately seventy-two (72) to eighty-four (84) hours per week.

80.     From in or around 2013 to in or around 2014, Plaintiff Garcia was paid a fixed salary of four hundred twenty dollars ($420.00) per week, regardless the number of hours worked during the workweek.  From in or around 2014 to the present, including the time Plaintiff worked at the 206-04 Hillside Avenue Location, Plaintiff Garcia has been paid a fixed salary of five hundred fifty dollars ($550.00) per week, regardless the number of hours worked during a given

workweek.

81.    Plaintiff Garcia observed Defendants Singh and Bhardwaj at both locations he worked, the one located at 206-04 Hillside Avenue and the one located at 72-20 37th Avenue supervising employees, giving orders to managers and employees, and overseeing the operations of the business.

82.    **Plaintiff Coj** worked for Defendants as a helper, packing employee, and stock clerk, from in or around 2010 to in or around October 2016 (the "Coj Employment Period").

83.    From in or around 2010 to in or around 2014, Plaintiff Coj worked as a helper and stock clerk at the 72-20 37th Avenue Location, doing cleaning, unloading trucks with products and placing them in the basement and on shelves, doing inventory, helping with recyclables in the basement, and doing general stock clerk duties at the supermarket.  During approximately five (5) months in 2014, Plaintiff Coj was transferred to the Apna Bazar Wholesale supermarket located at 56-28 56th Street, Maspeth, New York, where he worked mainly as a packer for the wholesale products that Defendants distributed to different supermarkets and stores in the New York area. From in or around 2014 to in or around 2015, Plaintiff Coj worked at the supermarket located at 124-16 Liberty Avenue, Richmond Hill, New York, as a helper and stock clerk, and was also responsible for one (1) aisle at the supermarket.

84.    As a result of an accident in 2015, Plaintiff Coj was absent from his job at the supermarket for approximately ten (10) months.  Plaintiff returned to work in or around 2016, working for about three (3) months at the market located at 124-16 Liberty Avenue, doing the same type of job.

85.    From in or around 2010 to in or around 2014, when Plaintiff Coj worked at the 72-20 37th Avenue Location, Plaintiff typically worked seven (7) days, sometimes six (6) days per

week, from approximately 8:00 am to approximately 8:00 pm, twelve (12) hours shifts, for a total of approximately seventy-two (72) to eighty-four (84) hours per week. Plaintiff Coj's start time could vary from approximately 9:00 am to approximately 9:00 pm, or from approximately 10:00 am to approximately 10:00 pm, yet he was always scheduled to work twelve (12) hours shifts.

86.     During the period Plaintiff Coj worked at Maspeth Wholesale Location, approximately five (5) months during 2015, Plaintiff typically worked six (6) days per week, sometimes seven (7) days per week, from approximately 6:00 am to approximately 5:00 pm, eleven (11) hours shifts, for a total of sixty-six (66) to seventy-seven (77) hours per week.

87.     During the period Plaintiff Coj worked at 124-16 Liberty Avenue Location, from in or around 2014 to in or around 2015, and then three (3) additional months during 2016, Plaintiff typically worked six (6) days per week, sometimes seven (7) days per week, from approximately 8:00 am to approximately 8:00 pm, twelve (12) hours shifts, for a total of approximately seventy-two (72) to eighty-four (84) hours per week.

88.     From in or around 2010 to in or around 2011, Plaintiff Coj was paid a fixed salary of approximately three hundred seventy-five dollars ($375.00) per week. From in or around 2011 to in or around 2012, Plaintiff Coj was paid a fixed salary of approximately four hundred dollars ($400.00) per week. From in or around the end of 2012 to in or around 2014, Plaintiff Coj was paid a fixed salary of approximately four hundred fifty dollars ($450) dollars per week.

89.     In or around 2014, upon information and belief, after a complaint was lodged against the Defendants, Defendants installed a timeclock machine in their supermarkets, purportedly to keep track of the hours worked by the employees. Notwithstanding the fact that the machine was in operation, Defendants' General Manager, "Dilbak," instructed Plaintiff Coj and other employees, to only punch ten (10) hours per day on the machine, despite the fact that Plaintiff

Coj and other employees were working shifts of approximately eleven (11) to twelve (12) hours per day. From in or around 2014 to in or around 2015, based on the purported hours tracked by the timeclock machine, Plaintiff Coj was paid approximately five hundred ($500) dollars per week, which increased in or around 2016 to approximately five hundred fifty ($550) dollars per week, for twelve (12) hours shifts ,six (6) or seven (7) days per week.

90. Throughout the Coj Employment Period, Coj was paid in cash, without a pay stub or a wage statement. During the last portion of his employment period, in or around 2016, Plaintiff Coj was required to sign certain documents at the supermarket which contained information about his payment. He was not allowed to keep those documents he signed and he is not aware of the content of those documents.

91. Plaintiff Coj observed Defendants Singh and Bhardwaj at the 72-20 37th Avenue Location, at the Maspeth Wholesale Location, and the 124-16 Liberty Avenue Location, supervising employees and overseeing the operations of the business.

92. **Plaintiff Martinez** worked for Defendants as a helper, packing employee, and stock clerk, from in or around November 2009 to the present (the "Martinez Employment Period").

93. Form in or around 2009 to in or around 2013, Plaintiff Martinez worked as a helper and stock employee at the 113-18 Liberty Avenue Location, responsible for the diary aisle. As a helper and stock clerk, Plaintiff Martinez was responsible for helping unload trucks with the diary products, inspecting merchandise, stocking shelves, tracking inventory, setting displays, labeling products, cleaning aisles, and making orders to restock products. During approximately three (3) months of his employment at 113-18 Liberty Avenue, Plaintiff Martinez was assigned to the vegetable and produce area, doing basically the same tasks as the ones in the diary aisle. During 2013, Plaintiff Martinez was absent from work for approximately three (3) months, after which he

returned to the same location for approximately one (1) additional month.

94.    From in or around December 2013 to the present, Plaintiff Martinez has been working at the supermarket located at 124-16 Liberty Avenue as a stock employee responsible for the vegetables and produce aisles. During this period, in addition to his work performed at the 124-16 Liberty Avenue Location, Plaintiffs Martinez was required to worked at a new supermarket located at 217 Bethpage Rd., Hicksville, New York, 11801.  For a period of a few weeks, after Plaintiff Martinez ended his shift at 124-16 Liberty Avenue, he and a group of other employees at the same location were driven in a company van to the store location in Hicksville, Long Island in order to help to set up the shelves, displays and all the necessary elements for, upon information and belief, the grand opening of that new supermarket.  During that period, Plaintiff Martinez was paid at the same rate each week, regardless the total number of hours work at both locations.

95.    During the period Plaintiff Martinez performed his job at the 113-18 Liberty Avenue Location, from in or around 2009 to in or around 2011, Plaintiff typically worked six (6) or seven (7) days per week (the schedule alternated from one week of six (6) days of work, followed with a week of seven (7) days of work), from approximately 9:00 am to approximately 9:00 pm, twelve (12) hours shifts, for a total of approximately seventy-two (72) to eighty-four (84) hours per week.

96.    During 2011, upon information and belief, after an investigation from the Department of Labor regarding the pay practices at the supermarket, Defendants installed a timeclock machine to track hours of employees at that location.  During a period of approximately three (3) months, Plaintiff Martinez was provided with a time card and usually worked ten (10) hours shifts.  After those three (3) months, Plaintiff Martinez returned to his original twelve (12) hours shifts, from approximately 9:00 am to approximately 9:00 pm, six (6) or seven (7) days per

week.

97.     From in or around 2013 to the present, during the period Plaintiff Martinez performed his job at the 124-16 Liberty Avenue Location, Plaintiff usually worked six (6) days per week, from approximately 7:00 am to between approximately 5:00 pm and 6:00 pm, ten (10) and eleven (11) hours shifts, for a total of approximately sixty (60) to sixty-six (66) hours per week.  During this period, Plaintiff Martinez was instructed by his general manager not to punch during the sixth (6th) day of work during the week.

98.     From in or around 2009 to in or around 2011, Plaintiff Martinez was paid a fixed salary of three hundred eighty dollars ($380.00) per week, regardless the number of hours worked during the work week.  During the three (3) month period in 2011 at the 113-18 Liberty Avenue Location, when the timeclock machine was initially installed, Plaintiff Martinez was paid between approximately four hundred dollars ($400.00) to five hundred dollars ($500.00) per week.  After the three (3) month period in 2011 to the present, Plaintiff Martinez has been paid a fixed salary of approximately four hundred fifty dollars ($450.00) per week.

99.     Plaintiff Martinez observed Defendants Singh and Bhardwaj at 113-18 Liberty Avenue Location and 124-16 Liberty Avenue Location, supervising employees and overseeing the operations of the business.

100.    **Plaintiff Lopez** worked for Defendants as a helper and stock clerk employee, from in or around June 2011 to the present (the "Lopez Employment Period").

101.    From in or around June 2011 to in or around 2013, Plaintiff Lopez worked as a helper and stock clerk employee at the 72-20 37th Avenue Location.  From in or around December 24, 2013 to in or around June 2014, for a period of approximately six (6) months, Plaintiff Lopez performed his job as a helper and stock clerk employee at the 2610-2631 Street Rd., Plaza

Shopping Center, Bensalem, Pennsylvania Location. When Plaintiff returned to the New York area, in or around June 2014, he performed his job again at the 72-20 37th Avenue Location for a period of approximately two (2) weeks. After that brief period, Plaintiff Lopez was transferred for approximately three (3) months in or around 2014, to the 124-16 Liberty Avenue Location, doing the same job as a helper and stock clerk employee. Finally, from in or around the end of 2014 to the present, Plaintiff Lopez has been performing his job at the supermarket located at 72-20 37th Avenue Location, working as a stock clerk.

102. From or around 2011 to in or around the end of December 2013, while working at the 72-20 37th Avenue Location, Plaintiff Lopez typically worked six (6) or seven (7) days per week, from approximately 9:00 am to approximately 9:00 pm, twelve (12) hours shifts, for a total of approximately seventy-two (72) to eighty-four (84) hours per week.

103. During the six (6) month period that Plaintiff Lopez worked at the recently opened 2610-2631 Street Rd., Bensalem, Pennsylvania Location, Plaintiff generally worked six (6) and often seven (7) days per week, from approximately 7:00 am to approximately 8:00 pm and sometimes even 10:00 pm, shifts of at least twelve (12) hours, for a total of between approximately seventy-two (72) to ninety (90) hours per week.

104. During the three (3) month period Plaintiff Lopez worked at the 124-16 Liberty Avenue Location, Plaintiff typically worked six (6) days per week, and sometimes seven (7) days per week, from approximately 8:00 am to approximately 8:00 pm, twelve (12) hours shifts, for a total of approximately seventy-two (72) to eighty-four (84) hours per week.

105. From in or around 2011 to in or around 2013, Plaintiff Lopez was paid a fixed salary of approximately five hundred dollars ($500.00) per week, regardless the number of hours worked during the given workweek.

106. From in or around the end of 2013 to in or around 2014, during the period Plaintiff Lopez worked at the Bensalem, Pennsylvania Location, Plaintiff was paid a fixed salary of approximately five hundred fifty dollars ($550.00) dollars per week.

107. From in or around June 2014 to in or around July 2015, when Plaintiff Lopez returned to work in the New York Area, he was paid a fixed salary of approximately five hundred fifty dollars per week ($550.00). From in or around July 2015 to in or around 2016, Plaintiff Lopez was paid a fixed salary of approximately five hundred seventy-five dollars ($575.00) per week.

108. From in or around September 2016 to the present, Plaintiff Lopez was paid between approximately five hundred eighty dollars ($580.00) to five hundred ninety-two dollars ($592.00) per week. The variation in Lopez's payment purportedly corresponded to the number of hours he worked for Defendants during the week.

109. Plaintiff Lopez observed Defendants Singh and Bhardwaj at the 72-20 37th Avenue Location, the Bensalem, Pennsylvania Location and the 124-16 Liberty Avenue Location, supervising employees and overseeing the operations of the business. Defendants have their "Corporate Office" at the 72-20 37th Avenue Location.

110. Throughout their respective employment periods with Defendants, Plaintiffs were paid their wages entirely in cash without any wage statements or any other breakdown of their hours worked for the pay period, their hourly rate(s), or any other information required by the NYLL.

111. Throughout their respectively employment periods, despite the fact that they routinely worked well in excess of forty (40) hours each week, Plaintiffs did not receive overtime premium pay for hours worked over forty (40) in a given workweek.

112. Throughout their respective employment periods, despite the fact that they

routinely worked shifts in excess of ten (10) hours in a single day, Plaintiffs were not paid spread-of-hours premiums for such days.

113. When Plaintiffs were able to take a break, which it was extremely rare, it typically lasted ten (10) minutes or less.

**Defendants' Unlawful Corporate Policies**

114. Plaintiffs and the NY Class Members and PA Class Members were all paid pursuant to the same corporate policies of Defendants, specifically paying a flat weekly rate, failing to pay minimum wage, and failing to pay overtime premiums.

115. Notwithstanding the fact that Plaintiffs and other NY Class Members frequently worked more than ten (10) hours in a given day, Defendants failed to pay them spread-of-hours premiums equal to one additional hour of minimum wage for each day working in excess of ten (10) hours. Defendants' failure to pay Plaintiffs and the NY Class Members spread-of-hours premiums was a corporate policy that applied to all of Defendants' employees working shifts and/or split shifts of more than ten (10) hours in a workday.

116. Plaintiffs have spoken with other employees of Defendants, who similarly worked in excess of forty (40) hours during the NY Class Period and PA Class Period and were similarly paid a purported salary for non-exempt work that did not vary with the number of hours worked, did not provide minimum wage for all hours worked, and did not provide overtime premiums of one and one-half (1.5) times their regular hourly rate for all hours worked over (40) per week. Defendants' failure to pay Plaintiffs and the NY and PA Class Members minimum wage for all hours worked or overtime compensation for all hours worked over forty (40) hours per week was a corporate policy of Defendants, which applied to all helpers, grocery clerks, stock employees, and other employees who were paid a flat weekly rate.

117. Plaintiffs have spoken with other employees of Defendants, who similarly were paid in cash and were not provided with any wage statement. Defendants' failure to provide wage statements in accordance with the requirements of the NYLL was a corporate policy that applied to all helpers, grocery clerks, stock employees, and other employees who were paid on a purported salary basis throughout the NY Class Period.

118. Defendants did not provide Plaintiffs and the NY Class Members with proper wage notices at the time of hire of by February 1 of each year.

119. Upon information and belief, throughout the NY Class Period and PA Class Period, and continuing to today, Defendants have failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

134. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

135. By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

136. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

137. Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full

unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

138.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

139.     Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by improperly treating them as exempt from the FLSA when they performed non-exempt grocery clerk duties and failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

140.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

141.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

142.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the NY Class Members)**

143.     Plaintiffs, on behalf of themselves and the NY Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

144.     Defendants willfully violated Plaintiffs' and NY Class Members' rights by failing to pay the correct statutory minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

145.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the NY Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the NY Class Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the NY Class Members)**

146.     Plaintiffs, on behalf of themselves and the NY Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

147.     Defendants violated the NYLL overtime rights of the Plaintiffs and the NY Class Members by improperly treating them as exempt from the NYLL when they performed non-exempt grocery clerk duties and failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

148.     Defendants willfully violated Plaintiffs' and the NY Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

149.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the NY Class Members to suffer loss of wages and interest thereon. Plaintiffs and the NY Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS</u>**
**(Brought on Behalf of Plaintiffs and the NY Class Members)**

150.     Plaintiffs, on behalf of themselves and the NY Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

151.     Defendants willfully violated Plaintiffs' and the NY Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the NY Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146.16 (2012).

152.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the NY Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the NY Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation,

damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
### (Brought on Behalf of Plaintiffs and the NY Class Members)

153. Plaintiffs, on behalf of themselves and the NY Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

154. Defendants have willfully failed to supply Plaintiffs and the NY Class Members a proper wage statement as required by Article 6, § 195(3).

155. Due to Defendants' violations of the NYLL, Plaintiffs and the NY Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS
### (Brought on Behalf of Plaintiffs and the NY Class Members)

156. Plaintiffs, on behalf of themselves and the NY Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

157. Defendants has willfully failed to supply Plaintiffs and the NY Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the NY Class Members as their primary language,

containing Plaintiffs' and NY Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

158.     Due to Defendants' violations of the NYLL, Plaintiffs and the NY Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, § 198(1-b)., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**PENNSYLVANIA MINIMUM WAGE ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff Lopez and the PA Class Members)**

159.     Plaintiff Lopez, on behalf of himself and the PA Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

160.     Defendants willfully violated Plaintiff's and PA Class Members' rights by failing to pay the correct statutory minimum wage for all hours worked, in violation of the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. Stat. § 333.101 *et seq.*, and their implementing regulations, including 34 Pa. Code § 231.21(a)-(b) and 34 Pa. Code § 231.41.

161.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the PA Class Members to suffer loss of wages and interest thereon.  Plaintiff and the PA Class Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to Pennsylvania Minimum Wage Act.

### NINTH CAUSE OF ACTION
### PENNSYLVANIA MINIMUM WAGE ACT – UNPAID OVERTIME
#### (Brought on Behalf of Plaintiff Lopez and the PA Class Members)

162.     Plaintiff Lopez, on behalf of himself and the PA Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

163.     Defendants willfully violated Plaintiff's and PA Class Members' rights by improperly treating them as exempt from the Pennsylvania Minimum Wage Act when they performed non-exempt grocery clerk duties and failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week, in violation of the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. Stat. § 333.101 *et seq.*, and their implementing regulations, including 34 Pa. Code § 231.21(a)-(b) and 34 Pa. Code § 231.41.

164.     Defendants willfully violated Plaintiff's and the PA Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the Pennsylvania Minimum Wage Act and regulations promulgated thereunder.

165.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the PA Class Members to suffer loss of wages and interest thereon. Plaintiff and the PA Class

Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to Pennsylvania Minimum Wage Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, NY Class Members and PA Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York and Pennsylvania Class Members and appointing Plaintiffs and their counsel to represent the Classes;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL and the PMWA;

e. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage pursuant to the FLSA, the NYLL and the PMWA and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wage pursuant to the FLSA, the NYLL and the PMWA and supporting regulations;

*h.*  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA, the NYLL and the PMWA and supporting regulations;

i.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, the NYLL and the PMWA and supporting regulations;

j.  An award of damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

k.  An award of one hundred dollars ($100) per Plaintiff and each of the NY Class Members for each workweek that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the NY Class Members as provided for by NYLL, Article 6 § 198(1-d).

l.  An award of fifty dollars ($50) per Plaintiff and each of the NY Class Members for each workweek that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of twenty-five

hundred dollars ($2,500) per Plaintiff and each of the NY Class Members as provided for by NYLL § 198(1-b)

m.    An award of prejudgment and post-judgment interest;

n.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      January 23, 2017

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative FLSA Collective and Classes*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Apna Supermarket/Apna Bazar Cash & Curry y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Rene Jorge Cortez
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Apna Supermarket/Apna Bazar Cash & Curry y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_____
Inocente Reaños Garcia
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Apna Supermarket/Apna Bazar Cash & Curry y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Constantino Garcia Diaz
Nombre Escrito

# CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Apna Supermarkets/Apna Bazar Cash & Carry y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Manuel Lopez Cuc._
Nombre Escrito

# CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Apna Supermarkets/Apna Bazar Cash & Carry y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Misuel Angel Martinez P._
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Apna Supermarkets/Apna Bazar Cash & Carry y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

Miguel Coj Mejia