

# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                                                                          AUGUST 25, 2017
PELTON@PELTONGRAHAM.COM

**VIA ECF**

Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Cortez, et al. v. Apna Holding LLC, et al.*
              **Civil Action No. 17-cv-0374 (LDH)(LB)**

Dear Judge Hall:

      We represent Named Plaintiffs Rene Jorge Cortez, Inocente Recinos Garcia, Constantino Garcia Diaz, Manuel Lopez, Miguel Angel Martinez and Miguel Coj Mejia (the "Named Plaintiffs") and Opt-in Plaintiffs Carlos Ibate Par, Carlos Urgiles, Eduardo Jorge Cortez, Gustavo Adolfo Ramirez, Henry Mauricio Urrutia, Javier Uraga Hernandez, Jose Ivan Osorio Rodriguez, Miguel Canastuj, Nery Palacio, Patricio Naula, Rosbin Jesus Rodriguez, Trinidad Garcia and Jose Odin Canales (the "Opt-in Plaintiffs" and, collectively with the Named Plaintiffs, the "Plaintiffs") in the above-referenced matter against Apna Holding LLC d/b/a Apna Bazar Cash & Carry, S&K Vegetables Corp., S&K Green Groceries Inc. (all doing business as "Apna Bazar Cash and Carry"), J&B Vegetables, Inc., Maspeth Wholesale Corp. (doing business as "Apna Wholesale" and, together with Apna Holding LLC, S&K Vegetables Corp., S&K Green Groceries Inc. and J&B Vegetables, Inc., the "Corporate Defendants" or "Apna Bazar"), John Doe Defendants #1-4 (representing certain other active corporations doing business as "Apna Bazar Cash & Carry Supermarket"), Desh Deepak Bhardwaj ("Bhardwaj") and Jaswinder Singh ("Singh" and, together with Bhardwaj, the "Individual Defendants" and, together with the Corporate Defendants and John Doe Defendants, the "Defendants"). This letter is submitted pursuant to the Fair Labor Standards Act (FLSA), and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Introduction**

      Plaintiffs are current and former helpers, stock clerks and general supermarket employees at seven (7) of Defendants' supermarkets located in Queens and Nassau Counties, New York. The Named Plaintiffs commenced this Action by filing a Class and Collective Action Complaint (Dkt.

Case 1:17-cv-00374-LB   Document 39   Filed 08/25/17   Page 2 of 7 PageID #: 197

HON. LASHANN DEARCY HALL
PAGE **2** OF **7**

No. 1, the "Complaint") on behalf of themselves and all similarly situated employees of Defendants on January 23, 2017, seeking unpaid minimum wages and unpaid overtime, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as spread-of-hours premiums damages and damages for wage notice and wage statement violations pursuant to the NYLL. Defendants filed their Answer on April 3, 2017, denying all material allegations. (Dkt. No. 31).

Plaintiffs served formal discovery demands upon Defendants on April 18, 2017. The parties appeared for an initial conference before Judge Bloom on April 26, 2017. During the conference, the case was referred to mediation, and the parties were ordered to exchange certain discovery. (*See* Text Order dated April 26, 2017). Subsequently, the parties produced the required discovery, including time and payroll records for the Named Plaintiffs and all but three (3) Opt-in Plaintiffs, and Plaintiffs provided an initial damages analysis on July 11, 2017. Plaintiffs' initial damages analysis was based on Plaintiffs' best estimates of hours worked and wages paid, as it is Plaintiffs' position that Defendants' records are inaccurate and/or incomplete. Based on their records, Defendants disputed the extent of Plaintiffs' damages position.

On July 18, 2017, the parties participated in a full-day mediation with Stephen Sonnenberg of Paul Hastings LLP. At the conclusion of the mediation, the parties agreed to the preliminary terms of a resolution on behalf of the Named and Opt-in Plaintiffs and subsequently worked together to finalize the attached settlement agreement, and Plaintiffs created a final allocation of the settlement amount.

## II. The Settlement Accounts for Litigation Risk and Compensates Plaintiffs for Substantial Damages

Throughout this Action, the parties have had several major points of contention on key legal and factual issues. Namely, the parties dispute the number of hours that Plaintiffs worked and the accuracy of Defendants' records.

It is Plaintiffs' position that Defendants had a corporate policy of paying employees a flat weekly rate of between $350.00 and $600.00 that did not vary with the number of hours worked. Plaintiffs allege that they were never informed that they were being paid on an hourly basis, although certain Plaintiffs noticed that their payment began fluctuating by approximately $20.00 to $70.00 per week after their locations were visited by the Department of Labor and a prior complaint was filed against Defendants in the Eastern District of New York. Plaintiffs allege that during the start of the Relevant Time Period, Defendants did not track hours worked by employees at their supermarkets by any method. Although each location had timeclocks, Plaintiffs allege that throughout their employment, they were unable to accurately record all hours that they worked. Specifically, certain Plaintiffs alleged that the timeclock would simply stop tracking hours after they had worked a certain number of days per week, and others asserted that they were instructed by managers not to clock all their hours worked, either by clocking out before the end of their regular shifts or by not punching in at all on the sixth or seventh days that they worked each week.

Defendants denied these allegations and disputed Plaintiffs' assertions that they were not properly paid. Defendants produced certain payroll records, including time cards and paystubs, for

all the Plaintiffs, except for 3 Opt-in Plaintiffs whom Defendants were unable to identify by the mediation date. These documents appear to show that Plaintiffs were paid on an hourly basis and received overtime premiums of one and one-half (1.5) times their hourly rates for hours worked in excess of forty (40) in a given workweek. Defendants argue that these records demonstrate that Plaintiffs were paid for all hours that they worked and received overtime premiums as required by federal and state law. While Plaintiffs would dispute the accuracy of Defendants' records at trial, Plaintiffs recognize that such documents could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' materials.

The parties also dispute whether this Action should proceed as a collective and class action. While the parties resolved the matter before any such motions were made, Plaintiffs believe that, based upon the similarity of their experiences with regard to Defendants' time-keeping and payment policies, they would have received conditional certification of an FLSA § 216(b) collective and, after discovery, certification of a Rule 23 class. Defendants would strongly oppose such certification. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiff's FLSA claims, but also their pendent state law claims.

Due to the fact-intensive nature of Plaintiffs' claims, substantive answers to these disputed issues would not be resolved until after formal discovery, motion practice, including collective and class motions, as well as summary judgment, and likely a trial. While Defendants produced certain documents in response to Plaintiffs' discovery demands and the Order of the Court at the initial conference, continued litigation would necessitate additional written discovery including interrogatories as well as numerous depositions of the individual parties and other employees and/or managers of the Corporate Defendants. Plaintiffs would seek conditional certification of an FLSA 216(b) collective, Rule 23 class certification and dispositive motions on certain of the disputed legal issues discussed above. Defendants would oppose any such motions and would likely seek to decertify any collective action, if one were conditionally certified.

As stated above, Plaintiffs' counsel created an initial damages analysis, based on Plaintiffs' best estimates of hours worked and wages paid. Plaintiffs' analysis, which formed the basis for Plaintiffs' position at the mediation, calculated approximately $421,097.99 in unpaid minimum wage damages, $544,340.00 in unpaid overtime wages and $183,221.99 in unpaid spread-of-hours premiums, for a total of $1,148,659.98 in "actual" unpaid wages.[1] A substantial and critical premise of Plaintiffs' "best-case scenario" for damages is the premise that Plaintiffs were, in fact, paid a weekly salary that did not vary with the number of hours that they worked. Throughout the litigation, Defendants vigorously contested Plaintiffs' allegations and argued that Plaintiffs were paid on an hourly basis at the applicable minimum wage rate and that Plaintiffs received overtime premiums for hours that they worked in excess of forty (40).

Given the above, the settlement amount ($485,000.00) represents a substantial recovery of the actual unpaid wages calculated from Plaintiffs' analysis, which would be the anticipated recovery if Plaintiffs had received a favorable outcome at trial under both federal and state law.

---

[1] With the addition of damages for Plaintiffs' wage notice and wage statement claims, as well as liquidated damages and interest, the total damages and penalties for all claims equaled to approximately $2,700,000.00.

The parties believe that this is a fair recovery based on the risks associated with establishing the calculated damages and the risks attendant with proceeding to trial.

**III.   Settlement Terms**

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $485,000.00 (the "Settlement Amount"). Of that amount, $163,005.39 is payable to Plaintiffs' counsel, representing $2,008.25 in expenses for counsel's costs for filing and service of the complaint and attending the mediation, plus one-third of the Settlement Amount after subtracting those expenses. The remaining $321,994.61 is payable directly to Plaintiffs (the "Net Settlement Amount"). The allocation of the Net Settlement Amount will be calculated based on Plaintiffs' damage analysis, which incorporates Plaintiffs' best recollections as to their hours worked.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release for any claims arising before the Named and Opt-in Plaintiffs signed the Settlement Agreement. The parties did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims; and (3) the Plaintiffs' attorneys' fees are standard (i.e., 1/3). Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." *Lola v. Skadden,* No. 13-cv-5008, 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

**IV.   Plaintiffs' Attorney's Fees and Expenses**

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B) and attached materials, as of August 25, 2017, Plaintiffs' counsel has spent more than 245 hours in prosecuting and settling this matter, resulting in a lodestar of $77,288.75. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $163,005.39) represents one-third (1/3) of the Settlement Amount, after subtracting the actual litigation costs, which is approximately 2.1 times the lodestar amount, which Courts routinely find to be within the reasonable range awarded in complex multi-plaintiff wage and hour litigation. *See, e.g., Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (Approving a multiplier of 2.28 and concluding that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."); *Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*, 2016 U.S. Dist. LEXIS 152496, *51 (Ct. Dist. Ct. 2016) (approving a multiplier of 2.77 as "well within the range of lodestar multipliers that are regularly approved by district courts in the Second Circuit").

In addition, this amount is consistent with what was agreed upon between Plaintiffs and their counsel in their retainer agreements and the consent to become party plaintiff forms filed with the Court. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.[2] This too is in line with decisions in this Circuit which routinely award one-third of the settlement fund as attorneys' fees in wage and hour cases. *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *13 (S.D.N.Y. May 7, 2015) (one-third); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 U.S. Dist. LEXIS 105596, at *26-*28 (S.D.N.Y. July 31, 2014) (33.33%); *Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *15-*16 (E.D.N.Y. Feb. 18, 2011) (33%); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *54-*55 (S.D.N.Y. Sept. 16, 2011) (33%).

The hourly billing rates utilized by plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour settlement in this district. *See Hall v. Prosource Techs., LLC*, 14-cv-2502(SIL), 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). In addition to the work already spent in bringing this action, Plaintiffs' counsel anticipates that they will have to perform additional work to administer the settlement, particularly since payment will be made in twelve (12) installments. Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable. "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request." *Willix*, 2011 U.S. Dist. LEXIS 21102, at *19; *see also Viafara*, 2014 U.S. Dist. LEXIS 60695, at *42 (lodestar multiplier will actually be lower because award includes time spent after award to enforce the settlement).[3]

**V.    The Court Should Find That the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart, 396 F.3d at 116 (internal quotations omitted). Courts typically presume that a settlement "meets the requirements of due process" where the agreement was reached after "arm's-length negotiations involving counsel and a mediator." *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *9 (E.D.N.Y. Feb. 18, 2011); *Massiah v. Metroplus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 U.S. Dist. LEXIS 166383, at *14 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement"). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le*

---

[2] The Opt-in Plaintiffs did not sign a retainer agreement, but their Consent to Become a Party Plaintiff for contains a similar provision regarding Pelton Graham's intention to seek one-third of the overall recovery as attorneys' fees.

[3] While Defendants' counsel joins in the request for approval of the settlement on behalf of Defendants, Defendants' counsel takes no position as to Plaintiffs' counsel's request for approval of fees from the settlement.

*v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 U.S. Dist. LEXIS 20786, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13 Civ. 6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations and with the assistance of an experienced employment mediator. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial portion of possible recovery under the FLSA.

Further, the negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery at trial would be less than the negotiated settlement amount. The litigation risks faced by Plaintiffs which render the negotiated settlement a fair and reasonable one include but are not limited to: 1) the risk that Defendants would prevail on a dispositive motion; 2) the risk that the factfinder would determine based on the records produced by Defendants that the Plaintiffs were properly compensated for all regular and/or overtime hours that they worked; 3) the risk that even if Plaintiffs established that they were not paid overtime premiums, the hours that they proved they worked in excess of 40 per week would be minimal; 4) the risk that the factfinder would determine that Plaintiffs received all wage statements and notices and that such were accurate and proper; and 5) the risk that the Court would deny Plaintiffs' motion for collective and/or class certification.

Given these risks, settlement at this stage unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

Finally, it cannot be disputed that the Agreement was the product of negotiations which were devoid of any semblance of fraud or collusion. Indeed, negotiations between the Parties were contentious, such that a lengthy settlement conference before your Honor was required to bridge the gap between their positions.

\*   \*   \*   \*   \*

In sum, it is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the parties. This is because the Agreement: (1) fairly accounts for Plaintiffs' possible recovery and Defendants' ability to mitigate or eliminate same; (2) enables

the parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| **PELTON GRAHAM LLC** | **BERKE-WEISS LAW PLLC** |
|---|---|
| By: */s/ Brent E. Pelton* | By: */s/ Laurie Berke-Weiss* |
| Brent E. Pelton | Laurie Berke-Weiss |
| Taylor B. Graham | Alexandra T. Berke |
| 111 Broadway, Suite 1503 | 950 3rd Avenue, 32nd Floor |
| New York, NY 10006 | New York, NY 10022 |
| Telephone: (212) 385-9700 | Telephone: (212) 888-2680 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |